# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BLUEFIELD DIVISION

| | |
|---|---|
| **TERRY ALLEN KING,**  )  | |
| )  | |
| **Plaintiff,**  )  | |
| **v.**  )  | Civil Action No. 1:12-6252 |
| )  | |
| **SARGENT CANTRELL,** *et al.***,**  )  | |
| )  | |
| **Defendants.**  )  | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment (Document No. 44.), filed on July 14, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 46.) Plaintiff failed to file a Response in Opposition. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

## PROCEDURAL BACKGROUND

On October 5, 2012, Plaintiff, acting *pro se*, filed his Application to Proceed Without Prepayment of Fees or Costs and a Complaint claiming entitlement to relief under 42 U.S.C. §1983.[1] (Document Nos. 1 and 2.) In his Complaint, Plaintiff named the following as Defendants: (1) Sargent Cantrail; (2) Counselor Perry; (3) Warden Bellford; and (4) Assistant Warden Dengus. (Document No. 2.) Plaintiff alleges that Defendants used excessive force following Plaintiff's escape

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

attempt from Stevens Correction Center on November 4, 2011. (Id.) Specifically, Plaintiff states as follows:

> At around 10:30 a.m., I cut the fence and fled. I ran across U.S. Route 52 (AKA Virginia Ave) and waded across the Elkhorn Creek. I went up and across the railroad tracks. I entered into the woods. The Steven Centers Correctional officers were chasing me and the Warden was yelling at me. He hollered for me to "stop." Mrs. Howell, Counselor, walked up in the woods and told me to stop. I stopped at her direction. She yelled at the officers to come over there. Officer Gilerd came over and told me to put my hands behind my back and I did. He put handcuffs on me with my hands behind my back. At no time did I resist or threaten staff. CO Gilerd and Mrs. Howell walked me down of the side of the mountain. It was approximately 10:45 a.m. at that time, Counselor Perry came across the railroad tracks screaming at me. He said, "get the f**k down on the ground, you asshole." As I was slowing, getting down, Counselor Perry slammed me, face first, into the railroad tracks causing sharp pain to my face and shoulders. Mr. Perry did not have any leg irons, so he put another set of handcuffs on my ankles. My ankles were too thick so he forced them into my flesh. This inflicted unending, excruciating pain. I asked him to loosen them. He refused, and cursed me.
>
> Officer Gilerd and Mrs. Howell left the scene as I lay on the ground in severe pain. After they left, Mr. Perry stomped my head numerous times off the railroad tracks. Then he got on top of me and started punching me repeatedly in the back and when he got done, he put his knees in my back . . .. Then Sgt. Cantrail came walking down the railroad tracks. When he got close within range of me, kicked me in the head several times saying "man that f**kin feels good." When Sgt. Cantrail got done kicking me, he and Mr. Perry dragged me under a train by my ears, hair and neck and I was handcuffed behind the back and my ankles were handcuffed together. If the train had moved, I would have been cut in half. When they got me on the other side of the train, Mr. Perry and Sgt. Cantrail dragged me down the railroad tacks about a quarter mile causing lacerations to my knees and bruising up and down my legs. After they dragged me down the tracks, Mr. Perry and Sgt. Cantrail threw me in the back of a black Jeep Liberty and Sgt. Cantrail got on top of me and put his knees in my neck to hold me down causing sharp pain to my neck and brain.
>
> When they got me back to Stevens Center, Mr. Perry and Sgt. Cantrail threw me out of the back of the Jeep on to the asphalt causing me to violently bust the right side of my face. They picked me up, both Mr. Perry and Sgt. Cantrail, by my shoulders and dragged me in the back door to medical causing sharp pain to run through my shoulders, neck, and ankles. When Mr. Perry and Sgt. Cantrail got me into medical, they threw me face down on the ground and busted my left eye open. Making a laceration about two inches deep and two inches long and they left me laying in a puddle of my own blood and it was approx. 11:30 a.m. As I was laying in a puddle of blood, Warden Bellford and Assistant Warden Dengus came into the medical unit and Sgt. Cantrail addressed both Wardens saying in a situation like this

>we can use blunt force right? Both Bellford and Dengus, in unison, answered "that is right." Then they departed from medical. After both the wardens left medical, the Stevens Centers' mail lady, Mrs. Curtis, came in medical and took photographs of my body, face, and legs, which were bruised, lacerated, beaten, and pouring the blood. Also, the puddle of blood on the floor. After the mail lady, Mrs. Curtis, was done taking photos, Sgt. Cantrail slammed me back down, face first, on the floor in the same puddle of blood from the first time causing more pain to my head and face. Counselor Perry and Sgt. Cantrail picked me up and sat me down on the medical table and Counselor Perry told the nurse to look in my medical file to see if I have HIV, violating my medical rights. After they checked my file, Counselor Perry and Sgt. Cantrail grabbed me by my shoulders and dragged me to the holding cell in the medical unit and slammed me on the ground face first and Sgt. Cantrail put his knees in the back of my neck causing sharp pain from my neck to my feet. Also, Counselor Perry stood on my ankles causing, unending, excruciating pain and the handcuffs cut into my flesh and my achilles tendon tear.

(Id., pp. 8 - 10.) As a result of the foregoing, Plaintiff alleges that he suffers from dizziness, blurred vision, double vision, migraine headaches, knots in the left side of his neck, jaws lock up and pop, ankles swell up and pop, lungs and kidneys shoot sharp pain through my whole body, collar bone and shoulders crack and pop, eyes have sharp pain that shoots through them, upper back goes numb, scars above my eyes, and knees pop and come out of place. (Id., p. 10.) Plaintiff requests monetary relief. (Id., p. 5.)

By Order entered on November 6, 2012, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees or Costs and ordered the Clerk to issue a Summons requiring Defendants to answer or otherwise respond to Plaintiff's claim. (Document No. 5.) On November 7, 2012, the Clerk's Office mailed a Summons and Complaint by certified mail/return receipt requested to Defendants Sergeant Cantrail, Counselor Perry, Warden Bellford, and Assistant Warden Dingus. (Document No. 6.) On November 16, 2012, the Summonses were returned unexecuted for Defendants Cantrail, Perry, and Bellford. (Document No. 9.) On November 26, 2012, the Summons

was returned unexecuted for Defendant Dingus.[2] (Document No. 11.) By Order entered August 21, 2013, the undersigned noted that Plaintiff indicated in his Complaint that Defendants were employed at Stevens Correctional Center and ordered the Clerk to reissue process. (Document No. 14.) The Clerk issued the Summonses. (Document No. 15.) The Summonses were returned executed on August 26, 2013. (Document No. 17.) Defendants filed their Answer on September 11, 2013. (Document No. 20.)

On December 16, 2013, Plaintiff filed a "Motion to Correct the Heading/Title of Action." (Document No. 28.) In support of his Motion, Plaintiff stated that "he was initially given inaccurate information as to the names and titles of the noted parties [and] through filings by the Defendants and their counsel, the Plaintiff has come to learn that the correct names." (Id.) Specifically, Plaintiff requested the party names be corrected as follows: (1) Sargent Cantrail amended to Sergeant Jesse Cantrell; (2) Warden Bellford amended to Associate Warden Patrick Belfiore; and (3) Assistant Warden Dengus amended to Warden Dingus. (Id.) The undersigned noted that even though "Plaintiff misspelled the names of Defendants Cantrell, Belfiore, and Dingus in the original Complaint, Defendants were served with process and filed an answer to Plaintiff's claims." (Id.) Accordingly, the undersigned granted Plaintiff's Motion on February 19, 2014. (Document No. 36.)

On July 14, 2014, Defendants filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 44 and 45.) Defendants argue that Plaintiff's Complaint should be dismissed based on the following: (1) "Official-capacity claims against all Defendants fail as a

---

[2] The Court notes that the certified mail was addressed to each Defendant at Mount Olive Correctional Center, One Mountainside Way, Mt. Olive WV 25185. (Document Nos. 9 and 11.) The mail, however, was returned as undeliverable with the notation that of "no such addressee, return to sender, unable to forward." (*Id.*)

matter of law because Defendants are improper parties in their official capacity" (Document No. 45, pp. 6 - 7.); (2) "Belfiore and Dingus are entitled to summary judgment as a matter of law because Plaintiff fails to allege any actionable conduct or create a genuine issue of material fact to preclude finding that they did not use any force upon Plaintiff" (Id., pp. 8 - 9.); and (3) "Cantrell and Perry are entitled to qualified immunity as a matter of law because Plaintiff offers no support for his claims of excessive force sufficient to rise to an actionable constitutional deprivation" (Id., pp. 9 - 14.). As Exhibits, Defendants attach the following: (1) A copy of "Defendants' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Plaintiff" (Document No. 44-1.); (2) A copy of Plaintiff's medical records from August 20, 2011, through, November 4, 2011 (Document No. 44-2, pp. 2 - 3.); and (3) A copy of the "Incident Report" dated November 4, 2011 (Id., p. 4.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 15, 2014, advising him of the right to file a response to Defendants' Motion for Summary Judgment. (Document No. 46.) Plaintiff, however, failed to file a Response in Opposition.

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

**1.     Official-Capacity Claims:**

In their Motion for Summary Judgment, Defendants argue that any official capacity claims against them should be dismissed. (Document No. 45, pp. 6 - 7.) Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[3] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State

---

[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312. To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, the undersigned finds that Plaintiff's claims are barred by the Eleventh Amendment and should be dismissed.

**2.    Defendants Belfiore and Dingus:**

In their Motion, Defendants Belfiore and Dingus argue that they "are entitled to summary judgment as a matter of law because Plaintiff fails to allege any actionable conduct or create a genuine issue of material fact to preclude finding that they did not use any force upon Plaintiff." (Document No. 45, pp. 8 - 9.) Specifically, Defendants Belfiore and Dingus first contend that "Plaintiff does not allege any use of excessive force on their part in the Complaint." (Id., p. 8.) Next, Defendants Belfiore and Dingus argue that Plaintiff "has not since alleged or proffered any evidence to support any use of force on their part." (Id.) Finally, Defendants Belfiore and Dingus contend that Plaintiff "admits that his only allegation against Belfiore and Dingus is that they replied in unison 'that is right,' when Cantrell asked 'in a situation like this we can use blunt force right?'" (Id.) Defendants Belfiore and Dingus, therefore, contend that they are entitled to summary judgment because "Plaintiff fails to proffer any evidence of or to even allege any use of force by Belfiore and Dingus." (Id., p. 9.)

Based upon a review of the record, the undersigned finds that Defendants Belfiore and Dingus' Motion for Summary Judgment should be granted. Notice pursuant to Roseboro v. Garrison,

528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 15, 2014, advising him of the right to file a response to Defendants' Motion for Summary Judgment and advising that his claims were subject to being dismissed if he failed to respond. Plaintiff, however, failed to file a Response objecting to Defendants' Motion. A review of the Complaint reveals that Plaintiff did not allege any use of force by Defendants Belfiore and Dingus. Additionally, the undersigned has reviewed "Defendants' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to Plaintiff." (Document No. 44-1.) Plaintiff's Response to Defendants' Interrogatories does not reveal any allegation of the use of force by Defendants Belfiore and Dingus. (Id.) In Response to Defendants' "Requests for Admission," Plaintiff admits that his "only allegation against Warden Dennis Dingus [and Associate Warden Patrick Belfiore] contained in [his] Complaint is that [they] answered, 'that is right,' to Sergeant Jesse Cantrell's allegedly stating, 'in a situation like this we can use blunt force?'" (Id., pp. 8 - 9.) Accordingly, the undersigned finds that Defendants Belfiore and Dingus' Motion for Summary Judgment should be granted.

**3.    Defendants Cantrell and Perry:**

In their Motion, Defendants Cantrell and Perry argue that they are entitled to summary judgment because "Plaintiff's mere allegations [of excessive force], without offering any evidence to support the same, do not rise to the level of a constitutional deprivation to overcome Cantrell's and Perry's entitlement to qualified immunity as a matter of law." (Document No. 45, pp. 9 - 14.) Defendants Cantrell and Perry argue that only appropriate and necessary force was used against Plaintiff. (Id.) Defendants state that "[g]iven that Cantrell and Perry were apprehending Plaintiff following his attempted escape by foot, their actions of handcuffing and cuffing Plaintiff's ankles were reasonable under the circumstances to prevent Plaintiff from being able to run and flee again."

(Id., p. 12.) Defendants note that "Plaintiff's medical records reflecting his examination following the subject incident do not contain evidence of any injury consistent with Plaintiff's allegations of excessive force but, instead, such injuries are consistent with the amount of force applied reasonably necessary to prevent Plaintiff from further fleeing." (Id., p. 13.) Specifically, Defendants argue that Plaintiff's medical records reveal that following his escape, Plaintiff was evaluated by Registered Nurse Krista Wood who noted only minor injuries. (Id.) Defendant contend that "Woods noted a 4" long abrasion, described as 'road rash' to Plaintiff's right abdominal area; small scratches to his chest area; minor abrasions on his left and right knees; 2" x 1" abrasion on his right cheekbone; and a 2 ½" x 1/4" laceration above his left eyebrow." (Id.) Defendants claim that Plaintiff's medical records "do not reflect that Plaintiff required stitches, x-rays, or scans" and his "only treatment for injuries allegedly caused by the incident was immediately following his return to SCC on November 4, 2011." (Id.) Based on the foregoing, Defendants argues that Plaintiff's injuries "are consistent with the force necessary to place Plaintiff on the ground to cuff him" and "are not consistent with Plaintiff's further allegations that Defendants 'stomped his head' off of the railroad tracks, 'busted' his head, or beat him by punching him repeatedly in the back." (Id., pp. 13 - 14.) Defendants, therefore, argue that "the only evidence supports a finding that Plaintiff's injuries were consistent with the amount of force reasonably necessary to apprehend a fleeing prisoner" and Plaintiff's mere allegations of excessive force "do not create a genuine issue of material fact to preclude finding that Cantrell and Perry are entitled to qualified immunity as a matter of law." (Id., p. 14.)

      Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to

responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

The Eighth Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment, protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; See Wilson v. Seiter, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). As a general matter, upon incarceration prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(*quoting* Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In the context of prison officials' use of force upon an inmate, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or

restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (citations omitted). To establish a violation of the Eighth Amendment in the context of a challenge to prison officials' use of force, an inmate must allege (1) that the prison officials acted with a "sufficiently culpable state of mind" under a subjective standard and (2) "sufficiently serious" conduct under an objective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-25, 115 L.Ed.2d 271 (1991).

To establish the subjective component, an inmate must demonstrate that prison officials applied force "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085. In determining whether prison officials acted maliciously and sadistically, the following factors must be balanced: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Additionally, the absence of serious injury is relevant to the determination of prison officials' culpable intent, but is not dispositive. Id.

To establish the objective component, an inmate must demonstrate more than *de minimis* pain or injury. See Hudson, 503 U.S. at 9, 112 S.Ct. at 1000; Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The objective component standard is significantly less demanding than required in the context of challenges to conditions of confinement because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9, 112 S.Ct. at 1000 ("This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how

11

diabolic or inhuman, inflicting less than some arbitrary quantity of injury.") Dislocation of a shoulder in the handcuffing a person and the resulting pain may constitute more than a *de minimis* injury. See Bane v. Virginia Department of Corrections, 267 F.Supp.2d 514, 532 (W.D.Va. 2003).

The undersigned will consider whether Defendants Cantrell and Perry are entitled to qualified immunity for using force against Plaintiff following his escape. Defendants Cantrell and Perry contend that the force used was reasonably necessary to apprehend and restrain a fleeing prisoner. Defendants Cantrell and Perry explain that they applied only necessary force to apprehend, handcuff, and ankle cuff Plaintiff. As stated above, officers may apply force in a good faith effort to maintain or restore discipline or to bring an arrestee under control. As noted above, Roseboro Notice was issued to Plaintiff on July 15, 2014, advising him of the right to file a response to Defendants' Motion for Summary Judgment and advising that his claims were subject to being dismissed if he failed to respond. Plaintiff, however, failed to file a Response opposing Defendants' Motion. Thus, Plaintiff has failed to come forward with facts sufficient to create a triable issue of fact. The record merely contains Plaintiff's allegations that Defendants applied excessive force when apprehending him, such as "stomping his head" on the railroad tracks, dragging him down the railroad tracks for a quarter of a mile, "busting" his head, and repeatedly punching him in the back. Defendants, however, dispute Plaintiff's allegations and submit a copy of Plaintiff's medical records revealing that Plaintiff suffered only minor injuries following his capture. Specifically, Plaintiff's medical records reveal that he suffered the following injuries: "an abrasion 'road rash' to the right abdomen approximately 4 inches in length;" "small scratches noted to chest," "both left and right knee has abrasions;" "right cheekbone has an abrasion 2" x 1;" and "laceration to left eyebrow approximately 2 ½" x 1/4"." (Document No. 44-2.) The medical records further reveal that

Plaintiff's wounds were cleaned and dressed, but his injuries did not require stitches or further testing. (Id.) Based upon a review of the record, the undersigned finds that Defendants Cantrell and Perry's use of force to apprehend and restrain Plaintiff did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. Accordingly, Defendants Cantrell and Perry are entitled to qualified immunity.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 44.), **DISMISS** Plaintiff's Complaint (Document Nos. 2 and 28.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 24, 2014.

R. Clarke VanDervort
United States Magistrate Judge